IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SHELTER MUTUAL INSURANCE CO. PLAINTIFF

v. CIVIL ACTION NO. 4:25-CV-193-SA-DAS

ANDREA D. MARBLE, KESWIC CARTWRIGHT,
KELSON CARTWRIGHT, and TELISHA CARTWRIGHT DEFENDANTS

ORDER AND MEMORANDUM OPINION

On November 21, 2025, Shelter Mutual Insurance Company initiated this litigation by filing its Complaint for Declaratory Judgment [1] against Andrea D. Marble, Keswic Cartwright, Kelson Cartwright, and Telisha Cartwright.[1] Now before the Court is Shelter's Motion for Summary Judgment [32], which is ripe for review. Having considered the parties' filings, along with the applicable authorities, the Court is prepared to rule.

*Factual and Procedural Background*

This declaratory judgment action involves interpretation of an automobile insurance policy issued by Shelter to Marble. The policy, which provides Marble with liability coverage for bodily injury claims in the amount of $100,000 each person/$300,000 each accident, was in effect at all times relevant to this litigation.

By way of background, on April 19, 2023, Kelson Cartwright and his father Keswic Cartwright were involved in an automobile accident with Marble in Cleveland, Mississippi. Specifically, the Cartwrights allege that their vehicle, which Kelson was driving and in which Keswic was a passenger, "was suddenly struck from behind by" Marble's vehicle. [32], Ex. 2 at p. 2. They allege they both suffered physical injuries in the accident.

[1] The Court notes that there is a discrepancy as to the spelling of Kelson Cartwright's name. In filings, his counsel refers to him as "Keslon" rather than "Kelson." However, for purposes of consistency, the Court will utilize the name as styled on the docket, as there has been no request to modify it.

On May 20, 2024, the Cartwrights initiated litigation against Marble in the Circuit Court of Bolivar County. In addition to Keswic and Kelson, Telisha Cartwright, who is Keswic's wife, is a plaintiff in the state court litigation. The Cartwrights assert that Marble's negligence was the sole cause of the accident. While Keswic and Kelson were allegedly injured in the accident, it is undisputed that Telisha was not in the vehicle at the time of the accident and therefore did not personally suffer any physical injury—her sole claim is for loss of consortium.

After the Cartwrights' attorney submitted a settlement demand for all three plaintiffs, Shelter offered a policy limit settlement of $100,000 for Keswic's bodily injury claim and $100,000 for Kelson's bodily injury claim. This offer was documented via a September 24, 2025 email from Shelter's counsel to the Cartwrights' counsel. *See* [32], Ex. 3. As to Telisha, the email to the Cartwrights' counsel reflected Shelter's position that "[t]he property damage claim was paid to Telisha Cartwright on May 3, 2023. As you are aware, the loss of consortium claim is a derivative claim of Keswic Cartwright, as her claim is dependent on his injuries. Telisha Cartwright was not in the accident vehicle. Therefore, Telisha Cartwright is not entitled to any benefits after Keswic Cartwright receives his 'Each Person' limits." *Id*. at p. 1. The settlement offer was not accepted, and the state court litigation remains ongoing with a scheduled trial date of February 3, 2027.

In the present litigation, Shelter seeks a declaration that Telisha's loss of consortium claim is derivative of Kelson's claim and therefore falls under the "each person" policy limit available to him. In its own words, "Shelter seeks a declaratory judgment adjudicating and declaring that the Policy limits available to attempt to negotiate and settle the claims filed against its insured, Andrea Marble, and thereby indemnify her, are limited to a per person limit of $100,000 for the

claims filed by Kelson Cartwright, and a per person limit of $100,000 for the claims filed by Keswic Cartwright and Telisha Cartwright." [1] at p. 6.

Shelter's Motion for Summary Judgment [32] seeks judgment in its favor on that basis. Shelter argues that there are no disputed questions of fact and that the Court should interpret the policy in its favor. The Cartwrights have responded in opposition, essentially arguing that any such determination would be premature.

*Summary Judgment Standard*

A party is entitled to summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In evaluating whether summary judgment is appropriate, the Court must review all well-pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party, however, cannot rely on conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments for showing a genuine issue for trial. *Id*.

*Analysis and Discussion*

In short, the narrow question in this litigation is whether Telisha is entitled to a separate $100,000 "each person" limit under the policy for her loss of consortium claim. Shelter requests that the Court interpret the policy in its favor and find that Telisha's loss of consortium claim is derivative of Keswic's bodily injury claim, rendering it subject to the same $100,000 "each person" limit of liability applicable to Keswic under the policy.

In opposition to Shelter's request for summary judgment, the Cartwrights contend that the matter is not yet ripe for resolution but that the Court should defer ruling until after the state court litigation is completed. Specifically, they assert that "[e]ven though Telisha Cartwright was not riding in the car driven by her son Kelson on the day of the subject accident, the type and extent of her damages which may, or may not, be covered by [the policy] will not be know[n] until the trial [is] completed." [37] at p. 4. In other words, they seemingly contend that this matter is not yet justiciable.

"The Declaratory Judgment Act provides that 'in a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Blue Hill Specialty Ins. Co. v. Robertson*, 2025 WL 1638516, at *3 (S.D. Miss. Jun 9, 2025) (quoting 28 U.S.C. § 2201(a)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Id.* (quoting *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019)) (internal quotation marks omitted). "It must ask (1) whether an

actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (quoting *Frye*, 953 F.3d at 294) (internal quotation marks omitted).

The Cartwrights' ripeness argument falls within the first prong of this inquiry, which essentially "refers to an Article III case or controversy." *Frye*, 953 F.3d at 294. "[The plaintiff] bears the burden of pleading facts demonstrating the existence of a justiciable controversy." *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)) (internal quotation marks omitted). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

Here, although the Cartwrights argue this matter is not ripe, they cite no authority involving facts remotely similar to the case at bar. Their argument is not that an actual controversy does not exist between them and Marble but, rather, that this Court should defer ruling because it is unclear what damages a jury might award Telisha in the state court litigation. Again, the Cartwrights cite no authority to support that particular proposition.

The Cartwrights' argument is a non-starter. While true that the state court litigation is ongoing, the question before this Court is an extremely narrow one—whether Telisha is entitled to an additional "each person" limit of liability arising from her loss of consortium claim. This Court's resolution of that issue would not interfere with—*or even be impacted by*—the outcome of the state court litigation. Furthermore, although the extent of damages that Telisha might be

awarded in the state court litigation is unknown, that conclusion does not alter the limited question here which is simply one of policy interpretation. Ultimately, this is a standard declaratory judgment request, which Shelter, as the insurer, has a right to bring when coverage is in doubt. *See*, *e.g.*, *Mercer v. Moody*, 918 So. 2d 664, 667-68 (Miss. 2005). There is no compelling reason to defer ruling.

The Court now turns to the heart of the matter—that is, whether Telisha is entitled to her own "each person" limit of liability under the policy. To resolve that issue, the Court turns to the language of the policy, which defines "bodily injury" as follows:

> (4) **Bodily injury** means:
>
> (a) A physical injury;
>
> (b) The physical pain and physical suffering that directly results from (a), above; or
>
> (c) A death that directly results from (a), above.
> The following medical conditions are excluded from the definition of bodily injury:
>
> (a) Mental injuries;
> (b) Sicknesses or diseases;
> (c) Mental anguish; and
> (d) Emotional distress;
> unless such condition is diagnosed by a medical doctor or licensed psychologist and directly results from bodily injury to the individual on whose behalf the claim is made.

[32], Ex. 1 at p. 5.

As to the "each person" limit of liability, the policy provides:

> The limit of liability stated in the Declarations for Coverage A for "each person" is the limit of our liability for all damages arising out of one person's bodily injury from one occurrence. This limit includes all damages to others resulting from that person's bodily injury whether direct or derivative in nature.

*Id*. at p. 14.

As a general matter regarding the interpretation of an insurance policy, "[a] policy must be considered as a whole, with all relevant clauses together." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010). On numerous occasions, the Mississippi Supreme Court has instructed that "if a contract is clear and unambiguous, then it must be interpreted as written." *Id.* (quoting *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)); *see also Phillips v. Enterprise Transp. Serv. Co.*, 988 So. 2d 418, 421 (Miss. Ct. App. 2008) (citations omitted) ("If a contractual term is unambiguous and not subject to interpretation, then it will be enforced as written, without attempting to surmise some possible but unexpressed intent of the parties."). If no ambiguity exists, a reviewing court should not look beyond the document's four corners. *Lee v. South Miss. Elec. Power Ass'n*, 17 So. 3d 597, 600 (Miss. Ct. App. 2009) ("If we find ambiguity that cannot be resolved by the four corners of the documents, we next resort to the discretionary application of the canons of construction[.]").

Importantly, "just because the parties disagree over how to interpret policy language does not mean the language is ambiguous." *Noble v. Wellington Associates, Inc.*, 145 So.3d 714, 719 (Miss. Ct. App. 2013) (citing *Architex*, 27 So. 3d at 1157). Rather, "[a]n ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009). An ambiguity only exists when "a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Architex*, 27 So. 3d at 1157 (quoting *Martin*, 998 So. 2d at 963). If an ambiguity does in fact exist in an insurance policy, it must be "read to favor the insured[.]" *Hankins v. Maryland Cas. Company/Zurich American Ins. Co.*, 101 So. 3d 645, 658 (Miss. 2012). Nevertheless, "a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Architex*, 27 So. 3d at 1157 (quoting *Martin*, 998 So. 2d at 963).

Applying that standard, the outcome here, according to Shelter, is straightforward because the policy language makes clear that Telisha's loss of consortium claim does not constitute "bodily injury" and instead falls under Keswic's "each person" limit of liability. The Court agrees. Stated simply, Telisha does not even assert she has suffered any "bodily injury" as it is defined under the policy. She alleges *no* physical injury whatsoever. Of course, this makes sense considering that Telisha was not in any way involved in the subject accident. It logically follows, then, that she alleges no physical pain or suffering directly resulting from her personal injury. She does not allege damages from a diagnosis of mental injuries, sickness, disease, mental anguish, or emotional distress. And even if she did, the policy clearly states that such must "directly result *from bodily injury to the individual on whose behalf the claim is made*." [32], Ex. 1 at p. 5 (emphasis added). That is clearly not the case here. Telisha's loss of consortium claim does not constitute "bodily injury" as defined under the policy.

Rather, Telisha's claim is derivative of Keswic's claim and therefore subject to his "each person" limit. As noted above, the policy specifically provides that the "each person" limit of liability "is the limit of [Shelter's] liability for all damages arising out of one person's bodily injury from one occurrence." *Id*. at p. 14. Importantly, the policy goes on to clarify that "[t]his limit includes all damages to others resulting from that person's bodily injury whether direct or derivative in nature." *Id*.

This language is plain and unambiguous. It is not susceptible to multiple interpretations. Telisha's loss of consortium claim is clearly derivative of Keswic's "bodily injury" claim. Her claim is therefore subject to Keswic's "each person" limit of liability. Again, the policy makes abundantly clear that Keswic's "each person" limit "includes all damages to others resulting from

[Keswic's] bodily injury whether direct or derivative in nature." *Id*.[2] The policy simply does not provide separate, additional coverage for Telisha's loss of consortium claim.

The Mississippi Supreme Court has reached the same conclusion on largely synonymous facts. *See Rylee v. Progressive Gulf Ins. Co.*, 224 So. 3d 535 (Miss. 2017). In *Rylee*, Richard Rylee, who was operating a motorcycle, and Jessica Brashier, who was operating a vehicle, were involved in a collision. *Id*. at 536. Richard's wife, Beth, was not with him at the time of the collision. *Id*. There were multiple insurance policies at play. *Id*. Richard received $25,000 in policy limits from Brashier's liability insurer (State Farm) and $50,000 in UM benefits from his own carrier (USAA). *Id*.[3] Subsequently, Beth filed a loss of consortium action against Brashier, Progressive, and USAA. *Id*. The trial court granted summary judgment to both Progressive and USAA on the basis that Beth was not entitled to any additional payments from either insurer because her loss of consortium claim was included in the "each person" policy limit that Richard had already received. *Id*. at 537.[4]

On appeal, the Mississippi Supreme Court affirmed, specifically opining that "the each-person policy limit is based on the number of persons who suffer bodily injury in the accident, *not the number of insureds making claims*." *Id*. at 537 (emphasis added). The court referenced two previous decisions where it had reached the same conclusion: "[t]wice when interpreting similar policy language, this Court has reached the exact same conclusion—that to recover more than the 'each person' limit for one person, there must be more than one person who sustained bodily injury during the accident." *Id*. at 537-38 (citing *State Farm Mut. Auto. Ins. Co. v. Acosta*, 479 So. 2d 1089, 1090-91 (Miss. 1985); *Old Sec. Cas. Ins. v. Clemmer*, 455 So. 2d 781, 782 (Miss. 1984)).

---

[2] Although the Court does not decide the issue based on it, it is noteworthy that the Cartwrights made no argument whatsoever in opposition to Shelter's position as to the language of the policy itself.

[3] Richard's primary insurer (Progressive) made no UM payment to him and instead claimed the right to offset the liability payment Richard received from State Farm.

[4] While, for the sake of brevity, it will not recite the policy language in full, the Court notes that the policy language at issue in *Rylee* was quite similar to the language at issue here.

Applying that standard to the underlying facts, the court concluded that "Beth was not with Richard during the crash. Richard was the only person who sustained bodily injury in the accident with Brashier. So Beth's loss of consortium claim falls under the each-person policy limit for Richard's bodily injury." *Id*. at 538.

The same outcome is warranted in the present case. Telisha was not involved in the accident and therefore did not suffer any physical injury because of it. Her loss of consortium claim falls under the "each person" limit of liability for Keswic's injuries.

*Conclusion*

For the reasons set forth above, Shelter's Motion for Summary Judgment [32] is GRANTED. It is hereby DECLARED that damages for Telisha Cartwright's loss of consortium claim fall under the "each person" limit of liability for Keswic Cartwright's bodily injury claim. A Final Judgment consistent with this Order and Memorandum Opinion will issue this day.

SO ORDERED, this the 9th day of October, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE